[Civ. Nos. 28894, 30629. First Dist., Div. Two. Dec. 28, 1973.]

LAKEVIEW MEADOWS RANCH, Plaintiff and Appellant, v. DAVID C. BINTLIFF et al., Defendants and Respondents.

COUNSEL

Miller, Morton, Wright & Caillat and Edward S. Sims for Plaintiff and Appellant.

Heller, Ehrman, White & McAuliffe, Weyman I. Lundquist, Douglas M. Schwab and Margaret D. Brown for Defendants and Respondents.

OPINION

ROUSE, J.—This case involves consolidated appeals by plaintiff Lakeview Meadows Ranch, a limited partnership, from that portion of an order (denying plaintiff a preliminary injunction) which determined that a particular transaction was not usurious, and from a judgment determining that plaintiff was not entitled to recover allegedly usurious interest payments made by it.

The material facts as disclosed by the record show that on July 14, 1965, at Los Angeles, California, defendant David Bintliff sold to plaintiff a certain parcel of land located in Santa Clara County for the total consideration of $2,000,000 pursuant to a written contract between Bintliff and plaintiff's assignors. In consideration for the grant deed to the property, plaintiff paid Bintliff the cash sum of $580,000 and delivered to Bintliff its promissory note in the principal sum of $1,420,000, together with a purchase money deed of trust on the property. The promissory note was dated July 2, 1965, and provided for interest on the unpaid principal at 6 percent per annum, payable semi-annually commencing January 14, 1966. The promissory note also provided for installment payments of principal as follows: $100,000 in January 1966; $100,000 in January 1967; $100,000 in July 1967; $510,000 in July 1968; and $610,000 in July 1969. The promissory note provided that unpaid interest should bear like interest as the principle, but that such unpaid interest so compounded should not exceed an amount equal to simple interest on the unpaid principal at the maximum rate permitted by law. Upon default in the payment of any installment of principal or interest, the entire unpaid sums of principal and interest were to become immediately due and payable at the option of the holder of the note.

On September 22, 1965, Bintliff assigned plaintiff's promissory note and deed of trust to defendant American General Life Insurance Company ("American") for the purpose of securing a debt owed by Bintliff to

American. Bintliff continued to be the owner of the note, subject only to American's security interest therein.

Prior to July 1, 1968, plaintiff paid all installments of principal and interest which became due under the note, including three principal payments of $100,000 each and all installments of interest which became due through January 14, 1968.

In June 1968, plaintiff, acting through its general partner, David Zerner, informed Bintliff that it would not be able to make the principal payment of $510,000 which would become due on July 14, 1968. Zerner, who was a certified public accountant and an attorney duly admitted to practice in the State of California, stated that plaintiff could pay only $100,000 and requested an extension of time to pay the balance of $410,000 until December 30, 1968.

Bintliff, acting through his agent, Roy Bennett, agreed to a modification of the parties' agreement as follows: plaintiff would immediately pay $100,000 on account of the principal installment due on July 14, 1968, together with all of the interest due on said date; commencing July 15, 1968, the interest rate on the entire unpaid principal balance of $1,020,000 would be increased from 6 percent to 9 percent per annum; and plaintiff would be permitted to defer payment of the $410,000 principal installment due on July 14, 1968, until December 30, 1968, without being in default under the original promissory note. It was agreed that Zerner, because of his knowledge of the requirements of California law, would draft and execute the written instrument setting forth this modification of the parties' agreement.

Following the discussion between Zerner and Bennett, plaintiff paid Bintliff $100,000 in principal and $32,455 in interest. Zerner thereafter drafted a written "Modification of Deed of Trust," dated July 2, 1968. Said modification was executed by plaintiff and by Bintliff.

In the month of December 1968, plaintiff paid Bintliff $44,190 as interest on the promissory note, as modified, for the period from July 15, 1968 to January 7, 1969. Plaintiff made no further payments on account of the note. On July 2, 1969, Bintliff and American executed a notice of default and election to sell under the deed of trust. Proceedings were commenced for a trustee's sale under the deed of trust. Plaintiff then brought suit, seeking (among other things) a preliminary injunction prohibiting said sale. The court, by order dated December 10, 1969, found that the modification agreement was not usurious and denied plaintiff a preliminary injunction. Defendants then proceeded toward completion

of the proceedings for the trustee's sale, and January 16, 1970, was set as the date for said sale. On January 14, 1970, plaintiff paid to the trustee the sum of $1,020,000 in principal, $94,911.10 in payment of interest on said $1,020,000 from January 8, 1969 to January 13, 1970, and also paid trustee's fees and costs. Plaintiff then filed a supplemental complaint, seeking to recover as usurious the interest it had paid subsequent to the execution of the modification agreement.

In addition to the foregoing, the court found that as a result of Zerner's conversation with Bennett, Zerner had concluded that he was to draft a document providing for the payment by plaintiff of as much interest as was legally allowable without exposing Bintliff to penalties under the laws against usury; that in agreeing to the modification, Bintliff intended to charge plaintiff only a higher legal rate of interest for the use of his money and did not intend to charge a usurious rate of interest; that the drafting of the modification agreement by Zerner, with knowledge that Bintliff wanted to charge only the maximum legal rate of interest, and the making of payments by plaintiff under the modification agreement, had created an estoppel against plaintiff to claim that the modification was usurious.

The court concluded as a matter of law that the modification agreement was not usurious and did not call for the payment of usurious interest by plaintiff; that plaintiff had made no payment of usurious interest to defendants; that upon default by plaintiff, Bintliff had the right to declare all then-outstanding and unpaid sums to be immediately due and owing and to commence proceedings to conduct a trustee's sale under the deed of trust; that plaintiff, by its actions in requesting an extension of time within which to make the July 14, 1968, payment of principal and in preparing the modification agreement, was estopped to claim that said modification agreement provided for the payment of usurious interest; that defendants Bintliff and American were entitled to judgment against plaintiff for their costs of suit.

Judgment for defendants was accordingly entered.

Plaintiff concedes that usury cannot occur in connection with an original bona fide sale transaction and that any person owning property may sell it at any price and on whatever terms he sees fit. However, plaintiff argues that usury can occur when a purchase-money obligation is *extended* and the seller forbears from collecting a debt in return for the buyer's promise to pay him an excessive rate of interest. Plaintiff takes the position that although 9 percent is not a usurious rate of interest, the modification agreement provided that defendant Bintliff would forbear (for a period of 5½ months) from collecting only the one installment of $410,000 in return

for plaintiff's agreement to pay an increased rate of interest on the entire unpaid principal balance of $1,020,000. Plaintiff reasons that since there was forbearance as to the $410,000 installment only and no forbearance as to the remaining $610,000, the increased interest charged on the entire principal balance of $1,020,000 must be treated as increased interest charged on the one $410,000 installment. Plaintiff's computations, under this analysis of the modification agreement, result in an interest rate of 18.7 percent per annum being charged for the 5½-month extension of the time for payment of the $410,000 installment.

Defendants, in reply to plaintiff's argument, assert that plaintiff's analysis of the modification transaction ignores the realities of the situation and the fact that the promissory note contained an acceleration provision which entitled defendant Bintliff to declare the entire unpaid balance immediately due and payable in the event plaintiff defaulted in the payment of any one installment of principal or interest. Defendants correctly point out that plaintiff approached defendant Bintliff in June 1968 and stated that it could not pay the $510,000 installment of principal due on July 14, 1968, and needed an extension of time to make said payment. Plaintiff obviously had no right to any such extension of time, and Bintliff had the option, at this point, of refusing to grant the extension and, on July 15, 1968, declaring the entire balance of $1,020,000 immediately due and payable. Thus, when Bintliff did agree to defer payment of the $510,000 installment (less the $100,000 to be paid immediately), Bintliff was also, in actual effect, deferring the time for payment of the remaining $610,000 which Bintliff could otherwise have demanded on July 15, 1968. Thus, defendants contend that there was a forbearance as to the entire unpaid balance of $1,020,000 and Bintliff therefore charged plaintiff interest at the entirely lawful rate of 9 percent.

■ We conclude that defendant's position is sound and accords with the rule that in testing a transaction for usury, the court must consider the entire amount of money available to the debtor and the entire length of time during which the debtor has the money available to him. (*Sharp* v. *Mortgage Security Corp.* (1932) 215 Cal. 287, 290 [9 P.2d 819]; *Haines* v. *Commercial Mortgage Co.* (1927) 200 Cal. 609, 625 [254 P. 956, 53 A.L.R. 725]; *Grall* v. *San Diego Bldg. & Loan Assn.* (1932) 127 Cal.App. 250, 252-253 [15 P.2d 797].) ■ It is also settled that if a contract is subject to two constructions, one of which will render it usurious and one which will render it lawful, the courts will give the contract such construction as will render it lawful, in the absence of evidence requiring the contract to be construed as usurious. (*Coley* v. *Wolcott* (1930) 103 Cal.App. 140, 146 [284 P. 241].)

In the instant case, defendants' analysis of the modification agreement is entirely reasonable. We find no evidence requiring that the agreement be construed as usurious.

■ Here, the trial court found that there was no intent on Bintliff's part to charge a usurious rate of interest and further found that plaintiff was estopped to claim that the modification agreement was usurious. Defendants contend that since both findings were amply supported by the evidence, they furnish alternative bases for affirming the judgment. We agree.

With regard to the finding of lack of usurious intent, plaintiff alleged in its verified complaint that "Bintliff made the demand for interest at 9% per annum on the entire principal balance with the intention and purpose of taking advantage of plaintiff's difficult position and of exacting as much interest as he could without exposing himself to legal penalties." Defendants properly characterize this allegation as an admission by plaintiff of two facts: (1) Bintliff intended that the 9 percent interest rate apply to the entire principal balance and (2) Bintliff intended to charge only a legal rate of interest.

In addition to this allegation in the verified complaint, there was evidence, consisting of testimony by plaintiff's agent, Mr. Zerner, and defendant Bintliff's agent, Mr. Bennett, which shows that the modification agreement was drafted by Zerner at Bennett's request. Bennett testified that when he made the request, he told Zerner that since he (Zerner) was a California lawyer, he would know how to draft such an agreement properly. It seems reasonable to infer that Bennett wanted Zerner to draft an agreement which was entirely lawful and did not violate the usury laws in any way and that Zerner was well aware of this fact.

Under the circumstances here present, there would appear to be ample support for the court's finding that defendant Bintliff lacked the intent to charge more than the legal rate of interest. Such intent is an element of usury, and usury may not be found where there has been no conscious and voluntary taking of more than the legal rate of interest. (*Burr* v. *Capital Reserve Corp.* (1969) 71 Cal.2d 983, 989 [80 Cal.Rptr. 345, 458 P.2d 185].)

■ Turning next to the court's finding of estoppel, it is settled that estoppel is a defense to a charge of usury. (*Teichner* v. *Klassman* (1966) 240 Cal.App.2d 514, 523 [49 Cal.Rptr. 742]; *Janisse* v. *Winston Investment Co.* (1957) 154 Cal.App.2d 580, 587 [317 P.2d 48, 67 A.L.R. 2d 225].) The evidence and the allegations of the verified complaint

show that plaintiff's agent, Mr. Zerner, agreed, in his capacity as a California lawyer, to draft the modification agreement to provide for 9 percent interest on the entire unpaid principal balance of $1,020,000. Zerner knew that defendant Bintliff wanted a legal and valid agreement, and he certainly had a duty to advise Bintliff if he believed that such agreement was usurious under California law. The record shows that Zerner at no time suggested that the agreement was usurious. When he drafted the agreement, he presumably believed that it provided for a legal rate of interest, and he allowed Bintliff to rely upon his judgment in this regard. It follows that the trial court properly found that Zerner's conduct created an estoppel against plaintiff to claim that the modification agreement was usurious.

For the reasons above stated, it is apparent that the modification agreement was not usurious and that, in any event, defendant Bintliff lacked usurious intent and plaintiff was barred by the defense of estoppel.

The order denying plaintiff a preliminary injunction and the judgment for defendants are affirmed.

Taylor, P. J., and Kane, J., concurred.